**UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| John P. Leon   JL4638<br>Scott M. Zauber SZ6086<br>William P. Rubley WR4169<br>Subranni Zauber LLC<br>750 Route 73 South – Suite 307B<br>Marlton, N.J 08053<br>(609) 347-7000; FAX (609) 345-4545<br>Attorneys for Debtors | |
| In Re:<br><br>RENAULT WINERY, INC.<br><br>                              Debtor | Case No.:  14-33075-ABA<br>Judge:  Andrew B. Altenburg, Jr.<br>Chapter 11 |
| In re :<br><br>RENAULT GOLF, LLC<br><br>                              Debtor | Case No.:  14-33079-ABA<br>Judge:  Andrew B. Altenburg, Jr.<br>Chapter 11 |
| In re:<br><br>TUSCANY HOUSE, LLC<br><br>                              Debtor | Case No.:  14-33084-ABA<br>Judge:  Andrew B. Altenburg, Jr.<br>Chapter 11 |
| In re:<br><br>RENAULT WINERY PROPERTIES, LLC<br><br>                              Debtor | Case No.:  14-33080-ABA<br>Judge:  Andrew B. Altenburg, Jr.<br>Chapter 11 |
| In re:<br><br>RENAULT REALTY CO., LLC<br><br>                              Debtor | Case No.:  14-33082-ABA<br>Judge:  Andrew B. Altenburg, Jr.<br>Chapter 11 |

**Debtors' Motion for (A) Interim and Final Orders Authorizing Postpetition Use of Cash Collateral, (B) Granting Adequate Protection to the Secured Party, (C) Scheduling a <u>Final Hearing Pursuant To Bankruptcy Rule 4001(B)</u>, and (D) Granting Related Relief**

By this motion (a) Renault Winery, Inc., (b) Renault Golf, LLC, and (c) Tuscany House, LLC (collectively, the "**Operating Debtors**")[1], seek entry of an interim Order in the form submitted herewith authorizing use of cash collateral (the "**Interim Order**"), pursuant to Bankruptcy Code section 363, Bankruptcy Rule 4001, and D.N.J.LBR 4001-4. The proposed Interim Order authorizes use of cash collateral, grants certain adequate protection to the secured creditor OceanFirst Bank, and (c) schedules a final hearing pursuant to Bankruptcy Rule 4001(d) (the "**Final Hearing**") to consider entry of an order granting the relief requested in the Motion on a final basis (the "**Final Order**"). In support of this Motion, the Operating Debtors rely upon and incorporate by reference the *Declaration of Dennis Del Vecchio in Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "**Del Veccio Declaration**") filed herewith. In further support of this Motion, the Operating Debtors respectfully state as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference of the United States District Court for the District of New Jersey, dated September 18, 2012. This matter is a core proceeding under 28 U.S.C. § 157(b)(M), and the Court may enter a final order on this motion. Venue of these cases and this Motion is proper under 28 U.S.C. §§ 1408 and 1409.

2. The predicates for the relief requested herein are Bankruptcy Code sections 105, 361, 362, 363, 506, 507(b) and 552, Bankruptcy Rules 2002, 4001, 6004(h), 7062 and 9014, and D.N.J. LBR 4001-4.

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Renault Realty Co., LLC, (9787), Renault Golf, LLC (0618), Renault Winery Properties, LLC (7686), Tuscany House, LLC (6179), and Renault Winery, Inc. (7686). These debtors have filed a motion for joint administration of their bankruptcy cases.

## BACKGROUND

### A. Procedural Background

3. On November 13, 2014 each of the Operating Debtors, and also Renault Winery Properties, LLC and Renault Realty Co., LLC filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the foregoing debtors are collectively referred to herein as the "Debtors"). The Debtors are debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108. Concurrently with the filing of this Motion, the Debtors filed a motion requesting joint administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b). No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.

4. To date, no creditors' committee has been appointed in these chapter 11 cases by the Office of the United States Trustee.

### B. General Background

5. The Debtors own and operate a hotel, two restaurants, a golf course, and a winery. The hotel is located in Egg Harbor City, N.J. and the other businesses are located on adjacent property in Galloway Township, N.J. The Debtors that operate the businesses are Renault Winery Inc. (winery, restaurant and gift shop), Renault Golf LLC (golf course), and Tuscany House LLC (hotel, restaurant, and banquet facility). Renault Realty Co., Renault Winery Property LLC, and Renault Winery Inc. own the real estate on which the businesses operate, as well as other real estate in the immediate area.

6. As discussed in the Del Vecchio Declaration, the Debtors experienced financial distress as the result of Superstorm Sandy, and those financial troubles were compounded by

questionable management by a former General Manager of the Debtors. When the Debtors were unable to resolve their financial problems by the date scheduled for a sheriff's sale of the Mortgaged Property[2] in a foreclosure action filed by OceanFirst Bank (the "Bank"), they decided to commence these chapter 11 cases. The Debtors believe that the commencement of these chapter 11 cases is in the best interests of the Debtors' creditors and other stakeholders.

7.   Additional information regarding the Debtors' history and business operations, their corporate and capital structure, and the events leading up to the commencement of the Debtors' chapter 11 cases, are set forth in greater detail in the Del Vecchio Declaration, which is incorporated herein by reference.

    **C.   The Debtors' Prepetition First Lien Debt**

8.   As discussed in the Del Vecchio Declaration, on August 1, 2014 OceanFirst Bank obtained a foreclosure judgment against the real estate on which the Operating Debtors operate their businesses, in the amount of $7,886,257.27.

9.   As discussed in the Del Vecchio Declaration, OceanFirst Bank also holds a security interest in the accounts receivable and other personal property of the Operating Debtors.

**RELIEF REQUESTED**

10.  The Operating Debtors seek entry of an Interim and a Final Cash Collateral Orders (a) authorizing the Operating Debtors to use Cash Collateral, (b) granting certain adequate protection to OceanFirst Bank, (c) scheduling the Final Hearing within thirty days of the commencement of these Chapter 11 Cases to consider approval of this Motion on a final basis, and (d) granting related relief.

---

[2] Any capitalized terms that are not defined herein have the meanings given to them in the Del Vecchio Declaration.

**THE OPERATING DEBTORS' IMMEDIATE NEED TO USE CASH COLLATERAL**

11. As set forth in the Del Vecchio Declaration, the Operating Debtors require immediate access to Cash Collateral to ensure that they are able to continue the operation of their businesses. At the outset of this case the Cash Collateral is the Debtors' sole source of funding for their operations and the costs of administering the chapter 11 process. Absent authority to immediately use Cash Collateral, the Debtors, their creditors and the estates generally would suffer irreparable harm because the Operating Debtors would immediately cease operations, which, in turn, would cause a significant immediate deterioration in the value of the Debtors' assets and businesses. The Operating Debtors' access to Cash Collateral is therefore necessary to preserve and maximize value for the benefit of all of the Debtors' stakeholders.

12. As further set forth herein, the Interim Order provides adequate protection in the form of a replacement lien and adequate protection payments to protect the Bank against any decrease in the value of its collateral arising from the Operating Debtors' use of Cash Collateral. The Debtors propose to make disbursements pursuant to a budget attached to the Interim Order as Exhibit A (the "**Budget**").

13. Access to existing Cash Collateral on an interim basis will provide the Debtors with the liquidity necessary to ensure that the Debtors have sufficient working capital to operate their businesses and thus preserve and maintain the going concern value of the Debtors' estates. Without access to that liquidity, the Debtors' ability to navigate through the chapter 11 process will be jeopardized, to the detriment of all stakeholders.

**MATERIAL TERMS OF THE INTERIM ORDER**

14. Debtors provide the following material terms of the proposed Orders authorizing use of cash collateral, pursuant to Bankruptcy Rule 4001(b)(1)(B)(iii):

  **A.** **Use of Cash Collateral.**  The Operating Debtors may use the Bank's cash collateral in their business operations in accordance with the budget submitted herewith;

  **B.** **Replacement Liens**.  As adequate protection for any postpetition decrease in the value of the Bank's interests in the collateral, replacement liens on the post-petition accounts receivable of the Operating Debtors, without the necessity of the execution by any Debtor (or recordation or other filing) of security agreements, to the extent of any decrease in value of the Bank's interest in the pre-petition collateral.

  **C.** **Adequate Protection Payments.**  The Operating Debtors will pay $5,000.00 to the Bank each month as adequate protection payments.

## BASIS FOR RELIEF

**I. The Debtors' Request to Use Cash Collateral and Proposed Adequate Protection are Consistent with Applicable Law**

15. The Operating Debtors' proposed use of Cash Collateral[3] is governed by Bankruptcy Code section 363.  Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor may use cash collateral as long as "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2).

16. Bankruptcy Code section 363(e) requires a secured party's interest to be adequately protected as a condition of a debtor using cash collateral; Code section 362(d)(1) requires adequate protection of interests in property due to the imposition of the automatic stay. *See In re Cont'l Airlines*, 91 F.3d 553, 556 (3d Cir. 1996).  While section 361 of the Bankruptcy Code provides examples of forms of adequate protection, such as granting replacement liens and administrative

---

[3] The Bankruptcy Code defines "cash collateral" as follows:  Cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.  11 U.S.C. § 363(a).

claims, courts decide what constitutes sufficient adequate protection on a case-by-case basis. *Resolution Trust Corp. v. Swedeland Dev. Grp., Inc. (In re Swedeland Dev. Grp., Inc.)*, 16 F.3d 552, 564 (3d Cir. 1994) ("[A] determination of whether there is adequate protection is made on a case by case basis."); *In re Satcon Tech. Corp.*, No. 12-12869, 2012 WL 6091160, at *6 (Bankr. D. Del. Dec. 7, 2012); *In re N.J. Affordable Homes Corp.*, No. 05-60442, 2006 WL 2128624, at *14 (Bankr. D.N.J. June 29, 2006); *In re Columbia Gas Sys., Inc.*, Nos. 91-803, 91-804, 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992); see also *In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993) (citing 2 Collier on Bankruptcy ¶ 361.01 [1] at 361-66 (15th ed. 1993) (explaining that adequate protection can take many forms and "must be determined based upon equitable considerations arising from the particular facts of each proceeding"); *In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996) ("[T]he determination of adequate protection is a fact-specific inquiry . . . left to the vagaries of each case . . . .") (citation and quotation omitted).

17. The concept of adequate protection is designed to shield a secured creditor from diminution in the value of its interest in collateral during the period of a debtor's use. *See In re Carbone Cos.*, 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008) ("The test is whether the secured party's interest is protected from diminution or decrease as a result of the proposed use of cash collateral."); see also *In re Cont'l Airlines, Inc.*, 154 B.R. 176, 180-81 (Bankr. D. Del. 1993) (holding that adequate protection for use of collateral under section 363 of the Bankruptcy Code is limited to use-based decline in value).

### A.    **The Proposed Adequate Protection of the Bank is Sufficient**

18. As set forth above, the Operating Debtors propose to provide the Bank with adequate protection in the form of replacement liens and adequate protection payments.

19. The Operating Debtors respectfully submit that, in light of the circumstances of

these chapter 11 cases, the proposed adequate protection is sufficient to protect the Bank from any diminution in value of the cash collateral during the interim period. The Cash Collateral will be used to sustain the business operations of the Operating Debtors, allowing for the maximization of the value of the Debtors' estates. If the Cash Collateral is not available for this purpose, the Debtors will be unable to fund payroll obligations, procure goods and services from vendors, or otherwise maintain their operations, thereby dissipating value to the detriment of the Bank and other stakeholders. The use of the Cash Collateral will therefore protect the Bank's security interests by preserving the value of its collateral. *See In re Constable Plaza Assocs., L.P.*, 125 B.R. 98, 105 (Bankr. S.D.N.Y. 1991) (observing that debtor's use of rents to maintain and operate property "will serve to preserve or enhance the value of the building which, in turn, will protect the collateral covered by [the secured lender's] mortgage"); *In re 495 Cent. Park Ave. Corp.,* 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) (evaluating "whether the value of the debtor's property will increase as a result of the" use of collateral in determining sufficiency of adequate protection); *In re Salem Plaza Assocs.*, 135 B.R. 753, 758 (Bankr. S.D.N.Y. 1992) (holding that a debtor's use of cash collateral to pay operating expenses, thereby "preserv[ing] the base that generates the income stream," provided adequate protection to the secured creditor).

20. In light of the foregoing, the Debtors submit that the proposed adequate protection to be provided for the Bank's benefit is appropriate.

**II.    Failure to Obtain Immediate Interim Use of Cash Collateral Would Cause Immediate and Irreparable Harm**

21. Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than fourteen (14) days after the service of such motion. However, the Court is authorized to conduct a preliminary expedited hearing on the motion, and authorize the Debtors' proposed use of Cash

Collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate. *See* Fed. R. Bankr. P. 4001(b)(2).

22.     The Operating Debtors have an immediate postpetition need to use Cash Collateral. The Operating Debtors cannot maintain the value of their estates during the pendency of these Chapter 11 Cases without access to cash. The Operating Debtors will use the cash to continue operating their business during these chapter 11 cases. The Operating Debtors will therefore be unable to proceed with operating their business without the ability to use Cash Collateral, and will suffer immediate and irreparable harm to the detriment of all creditors and other parties in interest. In short, the ability of the Operating Debtors to finance their operations and the availability of sufficient working capital and liquidity through the use of Cash Collateral is vital to the preservation and maintenance of the value of the Debtors' estates.

23.     The Operating Debtors therefore seek immediate authority to use the Cash Collateral on an interim basis as set forth in the proposed Interim Cash Collateral Order, to prevent immediate and irreparable harm to their estates pending the Final Hearing, pursuant to Bankruptcy Rule 4001(b).

### REQUEST FOR FINAL HEARING

24.     Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Operating Debtors request that the Court set a date for the Final Hearing within thirty days of the Petition Date, and fix the date and time prior to the Final Hearing for parties to file objections to the relief requested by this Motion.

### NOTICE

25.     The Debtors are providing notice of this Motion to: (i) the Office of the U.S. Trustee; (ii) the Bank's counsel; (iii) the parties included on the lists of the twenty (20) largest

unsecured creditors of each Operating Debtor; and (iv) the State of New Jersey – Division of Employer Accounts.

## NO PRIOR REQUEST

26. No previous request for the relief sought herein has been made to this Court or any other court.

**WHEREFORE**, for the reasons set forth herein and in the Del Vecchio Declaration, the Operating Debtors respectfully request that this Court (a) enter the Cash Collateral Orders (i) authorizing the Operating Debtors to use Cash Collateral on an interim and final basis subject to the terms and conditions set forth therein; (ii) granting adequate protection to the Bank as set forth in the proposed Interim and Final cash collateral Orders, (iii) scheduling the Final Hearing, pursuant to the Interim Order, within thirty (30) days of the commencement of these chapter 11 cases, to consider approval of this motion on a final basis, and (iv) granting related relief; and (b) grant the Debtors such other and further relief as may be just and proper.

**Subranni Zauber LLC**

 /s/ John P. Leon
By:  John P. Leon

November 13, 2014