**United States Bankruptcy Court District of New Jersey**

| | |
|---|---|
| John P. Leon   JL4638<br>Scott M. Zauber SZ6086<br>William P. Rubley WR4169<br>Subranni Zauber LLC<br>750 Route 73 South – Suite 307B<br>Marlton, N.J 08053<br>(609) 347-7000; FAX (609) 345-4545<br>Attorneys for Debtors | |
| In Re:<br><br>RENAULT WINERY, INC.[1]<br><br>                              Debtor. | Case No.: 14-33075-ABA<br>Judge: Andrew B. Altenburg, Jr.<br>Chapter 11<br><br>Jointly Administered |

**Debtors' Motion for Authority to Enter Into**
**Insurance Premium Finance Agreement and Grant Limited Security Interest to Lender**

By this motion Debtors seek entry of an Order authorizing them to enter into an agreement to finance the payment of an insurance premium, and grant to the lender a limited security interest in connection therewith.

**Jurisdiction and Venue**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**Background**

3. The Debtors in these jointly administered bankruptcy cases are five separate companies, which cooperatively operate a winery, championship golf course, two (2) restaurants,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, are: Renault Realty Co., LLC, (9787), Renault Golf, LLC (0618), Renault Winery Properties, LLC (9913), Tuscany House, LLC (6179), and Renault Winery, Inc. (7686).  The mailing address for each of the Debtors is 72 North Bremen Ave., Egg Harbor City, NJ 08215.

1

a boutique hotel, and a banquet facility. The hotel is located in Egg Harbor City, N.J. and the other businesses are located on adjacent property in Galloway Township, N.J. Each Debtor owns real and/or persona property.

4. On November 13, 2014 (the "Petition Date"), Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, thereby commencing these Chapter 11 cases.

5. The Debtors continue to operate their businesses and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. To date, no official committee or examiner has been appointed by the Office of the United States Trustee in these chapter 11 cases.

7. Renault Winery has served South Jersey as a winery for the past 150 years. Joseph Milza and his wife, Geraldine, took over the operations of Renault Winery in 1974. Mr. Milza continues to operate the winery and the related facilities.

8. The facilities include a 7,200 yard champion golf course (which sits on 220 acres), 20 acres of vineyards and gardens, the Tuscany House Hotel, a banquet room and two (2) restaurants, surrounded by approximately 1,100 acres of undeveloped natural woodlands.

9. All of the different facilities partner together to offer a unique and all inclusive vacation package that caters to both out-of-state patrons and local residents.

10. The winery employs twenty (20) full time employees and fifty four (54) part time employees, while Tuscany House employs fifteen (15) full time and forty seven (47) part time employees, and Renault Golf employs seven (7) full time employees and thirty five (35) part time employees.

11.     In the past three years, the Debtors have generated between $6,000,000 and $7,000,000 million in combined revenue, and the Debtors expect to generate between $7,000,000 and $8,000,000 in revenue in the next three years.

## Relief Requested

12.     Debtors propose to borrow approximately $46,065.50 from First Insurance Funding Corp. ("FIFC"), to pay a portion of the required premium to purchase property hazard insurance covering their real property improvements and personal property (collectively the "Property").

13.     The real property improvements are presently insured under a forced placed insurance policy obtained by OceanFirst Bank (the "Bank Policy"), which holds a mortgage on certain real estate owned by some of the Debtors.  However, the Bank Policy provides no insurance coverage for any personal property.

14.     The insurance coverage provided by the Bank Policy is in the amount of $5,000,000.00, while the insurance to be obtained by the Debtors ("Debtors' Policy") is in the amount of $12,000,000.00.  The annual premium for the Bank Policy is $68,107.50.  The annual premium for the Debtors' Policy is $54,644.70.  The Debtors' Policy thus provides more insurance coverage for less money.  The coverage to be provided under the Debtors' Policy is described in a quotation issued by Quaker Special Risk, a copy of which is attached hereto as **Exhibit "A."**

15.     Until the Debtors' Policy becomes effective, the Debtors are at risk of suffering irreparable harm from damage to the Debtors' real estate improvements or personal property, because the personal property is not insured, and the real estate improvements are not fully insured.

16.     The financing will also enable Debtors to conserve existing assets so as to allow the funding of their daily operations, including the payment of wages and the acquisition of the products, supplies and equipment that are vital to the continued operation of the Debtors' businesses.

17.     Absent this Court's authorization to obtain the requested credit, the Debtors will be unable to obtain the proposed insurance coverage.

18.     The Debtors do not have any existing financing available that would enable them to pay the Insurance Premium.

19.     Given the Debtors' current financial condition, the Debtors cannot obtain the necessary premium financing on an unsecured basis.  Financing on a post-petition basis is not available without the Debtors granting FIFC a limited security interest as set forth below.

20.     The Debtors are prepared to execute a Premium Finance Agreement ("Premium Finance Agreement") with FIFC for the financing of the Debtors' property insurance, upon receipt of court approval.  A true copy of the Premium Finance Agreement is attached hereto as **Exhibit "B."**

21.     As noted in the Premium Finance Agreement, the total premium amount is $54,644.70, and the total amount to be financed is $46,065.50.  Under the Premium Finance Agreement, Debtors will become obligated to pay FIFC the sum of $47,481.20, in ten (10) monthly installments of $4,748.12 each.  The installment payments are due on the 10th day of each month commencing on January 10, 2015.

22.     Debtors grant FIFC a limited security interest under the terms of the Premium Finance Agreement, as discussed below.

23. Pursuant to the terms of the Premium Finance Agreement, Debtors are appointing FIFC as their attorney-in-fact with the irrevocable power to cancel Debtors' Policy and collect the unearned premium if Debtors are in default of their obligations under the Premium Finance Agreement.

24. Debtors and FIFC have agreed that any Order approving the proposed financing should include the following provisions to adequately protect FIFC:

>   A. Debtors shall be authorized and directed to timely make all payments due under the Premium Finance Agreement, and FIFC shall be authorized to receive and apply such payments to the debt owed by Debtors to FIFC under the Premium Finance Agreement.
>
>   B. If Debtors do not make any of the payments under the Premium Finance Agreement as they become due, the automatic stay shall automatically lift to enable FIFC and/or third parties, including insurance companies providing the coverage under the Policies, to take all steps necessary and appropriate to cancel the Policies, collect the collateral and apply such collateral to the indebtedness owed to FIFC by Debtors. In exercising such rights, FIFC and/or third parties shall comply with the notice and other relevant provisions of the Premium Finance Agreement.

25. Debtors believe that the terms of the Premium Finance Agreement are commercially fair and reasonable, including the granting of a security interest as described above. Debtors are required to maintain adequate insurance coverage and without it, would be forced to cease operations.

26. The relief requested by this Motion is warranted and appropriate under the circumstances. Debtors submit that authorization of the Premium Finance Agreement will ensure that Debtors can continue necessary operations, and will not prejudice the legitimate interests of creditors and other parties in interest.

**Terms and Conditions of the Premium Finance Agreement**

27.     FIFC has committed to provide the post-petition financing on the terms and conditions set for the in the Premium Finance Agreement.  The significant terms of the FIFC finance agreement are as follows:

- **Insured/Borrower:** All of the Debtors

- **Lender:** First Insurance Funding Corp.

- **Agent or Broker:** Global Risk Partners, LLC

- **Total Premiums, Taxes and Fees:** $54,644.70

- **Cash Down Payment:** $8,579.20

- **Unpaid Premium Balance:** $46,065.50

- **Amount Financed:** $46,065.50

- **Finance Charge:** $1,415.70

- **Total Payments:** $47,481.20

- **Annual Percentage Rate:** 6.650%

- **Number of Payments:** 10

- **Amount of Each Payment:** $4,748.12

- **First Installment Date:** 1/10/15

- **Security Interest:** "The named insured . . . grants LENDER a security interest in the financial policies and any additional premiums required under the financed policies, including (but only to the extent permitted by applicable law) all return premiums, dividend payments . . ., and loss payments which reduce unearned premium, subject to any mortgagee or loss payee interest.  If any circumstances exist in which all premiums related to any financed policy could become fully earned in the event of a loss, LENDER shall be named a loss-payee with respect to such policy."

- **Finance Charge:** "The finance charge begins accruing on the earliest effective date of the policies listed in the Schedule of Policies.  The finance charge may include a nonrefundable service charge equal to the maximum amount permitted

6

by law ( . . . $12 in NJ . . .).  The finance charge is computed using a 365-day calendar year."

- **Late Payment:**  "A late charge will be assessed on any installment at least 5 days in default . . ..  This late charge will equal 5% of the delinquent installment or the maximum late charge permitted by applicable law, whichever is less . . .."

- **Prepayment:**  "The Insured is entitled to a refund of part or all of the unearned finance charge if the loan is prepaid in full prior to the last installment due date.  The refund shall be computed according to the applicable law subject to any nonrefundable service charge. . . .."

- **Insured's Agreement:**  "In consideration of the premium being advanced by LENDER to the insurance companies listed in the Schedule of Policies, their representative or the Agent or Broker listed above, the Insured promises to pay, to the order of LENDER, the Total of Payments subject to all of the provisions set forth in this Agreement."  See Section 1.

- **Power of Attorney:**  "INSURED IRREVOCABLY APPOINTS LENDER AS ITS "ATTORNEY-IN-FACT" with full power of substitution and full authority, in the event of default under this Agreement, to (i) cancel the financed policies in accordance with the provisions contained herein, (ii) receive all sums assigned to LENDER, and (iii) execute and deliver on behalf of the Insured all documents, forms and notices relating to the insurance policies listed on the Schedule of Policies in furtherance of this Agreement. . . . Insured agrees that this right to cancel will terminate only after all of the Insured's indebtedness under this Agreement is paid in full."  See Section 2.

- **Default/Cancellation:**  This provision is governed by section 5 of the Premium Finance Agreement.  In pertinent part it provides that "[a]t any time after default, LENDER can demand and has a right to receive immediate payment of the total unpaid amount due under this Agreement even if LENDER has not received any refund of unearned premium.  If the Insured is in default, LENDER has no further obligation under this Agreement to pay premiums on the Insured's behalf, and LENDER may pursue any of the remedies provided in this Agreement or by applicable law.  If a default results in cancellation of any insurance policy listed in the Schedule of Policies, the Insured agrees to pay a cancellation charge where allowed by applicable law. . . . If cancellation occurs, where permitted by law, the Insured agrees to pay LENDER interest on the balance due at the contract rate or at the maximum lawful rate, whichever is less, until the balance is paid in full or until such other date as provided by applicable law."

- **Lender's Rights After the Policies are Cancelled**:  "After any financed policy is cancelled, whether by LENDER, the Insured, or the insurance companies listed in the Schedule of Policies, LENDER has the right to receive all unearned premiums and other funds assigned to LENDER as security herein and to apply them to

> Insured's unpaid balance under this Agreement or any other agreement between the Insured and LENDER . . .. Receipt of unearned premiums does not constitute payment of installments to LENDER, in full or in part. If the amount received is more than the amount owed by Insured, Insured will be responsible for the deficiency. Insured agrees that insurance companies may rely exclusively on LENDER'S representations about the financed policies." See Section 8.

### Debtors Are Unable to Obtain Necessary Additional Post-Petition Financing on an Unsecured Basis

28.  As discussed above, the Debtors could not have obtained the required insurance premium financing on an unsecured basis.

29.  To show that credit required is not obtainable on an unsecured basis, a debtor need only demonstrate "by a good faith effort that credit was not available without" the protections of sections 364(c) or 364(d) of the Bankruptcy Code. Bray v. Shenandoah Federal Savings and Loan Ass'n. (In re Snowshoe Co.), 789 F. 2d 1085, 1088 (4th Cir. 1986).

30.  Thus, "[t]he statute imposes no duty to seek credit from every possible lender, before concluding that such credit is unavailable." Id. at 1088; see also In re Ames Dep't Stores, Inc., 115 B. R. 34, 40 (Bankr. S.D.N.Y, 1990). Moreover, where few lenders are likely to be able and willing to extend the necessary credit to the debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct an exhaustive search for financing." In re Sky Valley. Inc., 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), aff'd sub nom, Anchor Sav. Bank FSB v. Sky Valley, Inc., 99 B.R. 117, 120 n.4 (N. D. Ga. 1999).

31.  Debtors worked closely with their insurance broker Global Risk Partners LLC to obtain the required insurance on the best possible financial terms, and have relied upon their broker's advice with respect to terms of financing available to them. The Debtors' broker has advised them that unsecured premium financing is not available to them, and that none of the companies that the broker works with would agree to provide the financing without a security

interest as provided in the Premium Finance Agreement. Debtors are thus unable to obtain premium financing as unsecured credit or as debt allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code.

32. The terms and conditions of the FIFC Financing Agreement are fair and reasonable and were negotiated by the parties in good faith and at arm's length.

33. Under the circumstances of this case, the granting of the relief requested by this Motion is warranted.

34. Pursuant to D.N.J. LBR 9013-2, the Debtors submit that no separate brief is required in support of this Motion, because no novel issues of law are presented by this Motion, and the relevant authorities are set forth herein.

35. No previous motion for the relief sought herein has been made to this or any other court.

## Conclusion

For all of the foregoing reasons, Debtors submit that the court should enter the proposed Order authorizing and directing Debtors to enter into the Premium Finance Agreement, and take all actions necessary or appropriate to effect the Agreement

                                                      Subranni Zauber LLC

                                                     /s/ John P. Leon
                                                     John P. Leon   JL4638

December 29, 2014