# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| John P. Leon   JL4638<br>Subranni Zauber LLC<br>750 Route 73 South – Suite 307B<br>Marlton, NJ 08053<br>(609) 347-7000; FAX (609) 345-4545<br>Attorneys for Debtors | |
| In Re:<br><br>RENAULT WINERY, INC.[1]<br><br>                    Debtor | Case No.:  14-33075-ABA<br>Judge:  Andrew B. Altenburg, Jr.<br>Chapter 11<br><br>JOINTLY ADMINISTERED |

| |
|---|
| Recommended Local Form:        ☐ Followed        ■ Modified |

## APPLICATION FOR RETENTION OF PROFESSIONAL

1. The applicants, Renault Winery Inc. and the entities identified in footnote 1 below are the debtors in these jointly administered chapter 11 cases ("Debtors").

2. Debtors seek to retain the following professional, <u>Equity Partners HG LLC ("Equity Partners")</u> to serve as:

 ☐ Attorney for: ☐ Trustee ☐ Debtor-in-Possession

 ☐ Official Committee of _____

 ☐ Accountant for: ☐ Trustee ☐ Debtor-in-Possession

 ☐ Official Committee of _____

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Renault Realty, Co., LLC, (9787), Renault Golf, LLC (0618), Renault Winery Properties, LLC (7686), Tuscany House, LLC (6179), and Renault Winery, Inc. (7686).  The mailing address for each of the Debtors is 72 North Bremen Ave., Egg Harbor City, NJ 08215.

■ Other Professional:

☐ Realtor    ☐ Appraiser    ☐ Special Counsel

☐ Auctioneer    ■ Other (specify):

<u>Investment Banker for the Debtors</u>

3. The employment of the professional is necessary because:

The Debtors seek to employ Equity Partners, effective as of the date this Application is filed, to act as its investment banker to (a) facilitate the sale of the Debtors' businesses as going concerns, (b) facilitate the sale or lease of substantially all of the Debtors' assets (the "Assets"), (c) assist Debtors in locating an equity investor or joint venture partner, and/or (d) assist Debtors in connection with any refinancing or restructuring of its existing debts.

4. The professional has been selected because:

Equity Partners is an enterprise specializing in turnarounds, financial restructuring, consulting, refinancing, sales of businesses as going concerns, sales of real and personal property, and liquidation of assets of financially troubled companies. Equity Partners has extensive experience and knowledge in matters of this nature, and the Debtors believe that Equity Partners is well qualified and competent to perform the services required by the Debtors that will be necessary in these chapter 11 cases. Debtors have accordingly entered into a June 18, 2015 Retention Agreement with Equity Partners, under which Equity Partners will serve as Debtors' investment bankers (the "<u>Retention Agreement</u>"), subject to court approval. A copy of the Equity Partners Agreement is attached hereto and made a part hereof as **Exhibit A**. To the extent any conflict exists between the terms of the Retention Agreement and this Application, the terms of the Retention Agreement shall control.

5. Pursuant to the Retention Agreement, Equity Partners will provided certain services to the Debtors, including but not limited to the following:

(a) Inspect the Assets to determine their physical condition.

(b) Prepare a program which may include marketing the Assets through newspapers, magazines, journals, letters, fliers, signs, telephone solicitation, the Internet and/or such other methods as Equity Partners may deem appropriate.

(c) Prepare advertising letters, fliers and/or similar sales materials, which would include information regarding the Assets.

(d) Endeavor to locate parties who may have an interest in becoming a joint venture partner, investing in, acquiring, or refinancing the Debtors' businesses or the Assets.

(e) Circulate materials to interested parties regarding the Assets, after completing confidentiality documents.

(f) Respond, provide information to, communicate and negotiate with and obtain offers from interested parties and make recommendations to Debtors as to whether or not a particular offer should be accepted.

(g) Communicate regularly with Debtors in connection with the status of Equity Partners' efforts with respect to the disposition of the Assets. This shall include a weekly written report to all Parties-in-Interest.

(h) If requested by Debtors, negotiate with various stakeholders of the Debtors, including but not limited to, secured and unsecured creditors and equity shareholders, in regards to the possible financial restructuring of the existing claims of the creditors and/or equity shareholders of the Debtors.

(i) Recommend to Debtors the proper method of handling any specific problems encountered with respect to the marketing or disposition of the Assets.

(j) Perform related services necessary to maximize the proceeds to be realized for the Assets.

6. The proposed arrangement for compensation is as follows:

(a) in the case of an equity investment or sale, paid in cash at settlement of any investment and/or sale of assets closed and funded, or upon confirmation of a reorganization plan, for any offers received under the terms of this Agreement and the fee for its services shall be the greater of $100,000 or an amount calculated as follows:

    6% of the first $5,000,000 (five million dollars) of Gross Value, and
    3% of Gross Value between $5,000,001 and $9,000,000, and
    5% of Gross Value in excess of $9,000,000 (nine million dollars), or

(b) in the case of a restructuring, paid in cash upon approval of the restructuring and/or plan of reorganization, and shall be the greater of $150,000 or an amount calculated under sections 5 and 6(a) herein, or

(c) in the case of refinancing, paid upon settlement, and shall be the greater of $150,000 or 3% of the Gross Value. In the case of refinancing, for purposes of calculating Gross Value, the total amount of the available financing committed to will be used, whether or not the Debtor chooses to draw down the entire amount available.

(d) in the case of a joint venture or merger, upon consummation, and shall be the greater of $150,000 or an amount calculated under sections 5 and 6(a) herein.

(e) For any transaction that closes with Financial Business Systems or either of its principals (Steve Foreman/Tilak Singh) ("Shortlist One"), Equity Partners will agree to discount its fee by one-half (1/2), unless the Gross Value provided by Shortlist One is at least $250,000 higher than its first written offer, in which case the fee shall be discounted by one-third (1/3). For any transaction that closes with (i) Dr. Nicholas DePace & Associates or (ii) Dr. James Clifford ("Shortlist Two"), Equity Partners will agree to discount its fee by one-third (1/3), unless the Gross Value provided by Shortlist Two is at least $250,000 higher than its first written offer, in which case there will be no discount.

(f) Equity Partners shall be entitled to receive its fee from any purchase, refinance, equity investment, joint venture or restructuring completed within 12 months by/with a prospect identified during the term of this Agreement.

(g) The fee to Equity Partners shall be paid in cash at settlement, and such payment shall be a condition of, the closing of any transaction.

  7.  Equity Partners' decision to advise and assist the Debtors in connection with this chapter 11 case is subject to its ability to be retained in accordance with the terms of the Retention Agreement pursuant to section 328(a), and not section 330, of the Bankruptcy Code, except that nothing shall prejudice the right of Office of the United States Trustee to seek review of any compensation under section 330 of the Bankruptcy Code. Accordingly, if this court approves the Retention Agreement, Equity Partners shall receive compensation pursuant to the Retention Agreement as set forth above.

4

8. As noted above, the Retention Agreement provides that (a) Equity Partners shall be entitled to receive its fee from any purchase, refinance, equity investment, joint venture or restructuring completed within 12 months by/with a prospect identified during the term of the Equity Partners Agreement, and (b) the fee to Equity Partners shall be paid in cash at closing of a transaction, and such payment shall be a condition of the closing of any transaction. Accordingly, subject to Court approval, Equity Partners' fee shall be paid from the proceeds of a successful transaction at the time of the closing.

9. The Retention Agreement at section 4 provides for Debtors to pay expenses incurred/to be incurred by Equity Partners, as follows:

> EXPENSES. Equity Partners will prepare a budget for advertising, marketing, travel, and any other expenses, which shall not exceed twenty thousand dollars ($20,000), which amount shall be paid to Equity Partners by Debtor as follows: $5,000 to be paid immediately following the entry of the Approval Order, then $5,000 to be paid 30 days after the entry of the Approval Order, and the balance of $10,000 to be paid in cash at settlement of any transaction, and such payment shall be a condition of, the closing of any transaction. These monies are strictly for marketing costs such as printing, mailing, telephone and travel related expenses to meet investors and to provide due diligence materials to prospects.

Equity Partners agrees that it will not apply any funds to expenses incurred without approval from this Court.

10. Equity Partners intends to apply, on a final basis only, for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases. Debtors' counsel shall file that fee application on behalf of Equity Partners, which will maintain records in support of all actual, necessary costs and expenses incurred. However, as noted above, the Debtors are seeking approval of Equity Partners' fee arrangement under section 328(a) of the Bankruptcy Code only, because (a) it is not the general practice of investment banking firms like Equity Partners to keep detailed time records similar to those

customarily kept by attorneys; (b) Equity Partners does not ordinarily keep time records on a "project category" basis; and (c) Equity Partners compensation is based on a fixed transaction fee.

11. Accordingly, the Debtors respectfully request that Equity Partners should not be required to maintain time records of its efforts and that Equity Partners not be required to provide or conform to any schedule of hourly rates. To the extent that Equity Partners would otherwise be required by the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the Trustee Guidelines or other applicable procedures and orders of the Court to submit more detailed time records, the Debtors and Equity Partners respectfully request that this Court waive such requirements, provided, however, that Equity Partners will file with the court records (in summary format) that contain reasonably detailed descriptions of the services provided to the Debtors. There is precedent for this procedure, as it was approved by the New Jersey Bankruptcy Court for the District of New Jersey when Equity Partners was retained by the debtor in the chapter 11 case filed by Gaspari Nutrition, Inc., Case No. 14-30963 (CMG). A copy of the amended retention Order entered in that case is attached hereto as **Exhibit "B."**

12. The Debtors and Equity Partners submit that the compensation structure set forth above is reasonable, and that it is typical of compensation arrangements entered into by Equity Partners and other comparable firms in connection with the rendering of similar services under similar circumstances. Moreover, Debtors did not accept the original compensation arrangement proposed by Equity Partners. Instead, they entered into the Retention Agreement only after negotiating a reduction of the commission percentages proposed by Equity Partners in its original proposal.

13. Lastly, the Retention Agreement provides that Debtors agree to indemnify and hold harmless Equity Partners and each person, if any, who controls Equity Partners (within the meaning of the Securities Act of 1933, as amended, and the Securities Exchange Act of 1934, as

amended) against any lawsuits, claims, losses, damages or liabilities (or actions or proceedings in respect thereof) and costs and expenses to which Equity Partners or such controlling person may become subject to as a result of the Equity Partners Agreement and subsequent engagement. Such indemnification shall survive the termination of Equity Partners' engagement under the Equity Partners Agreement and shall be binding upon the Debtors and its stockholders, and their successors and assigns. The Equity Partners retention agreement in the Gaspari Nutrition case contained a similar provision. In that case, the indemnification provision was subject to certain limitations and qualifications that were included in the retention order in that case at the request of the United States Trustee. Those same qualifications and limitations have been included <u>in the Retention Agreement</u> in these cases.

14. To the best of the applicants' knowledge, the professional's connection with the Debtors, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee, is as follows: *See* Certification of Professional filed contemporaneously herewith.

15. To the best of the applicants' knowledge, the professional:

- does not hold an adverse interest to the estate.

- does not represent an adverse interest to the estate.

- is a disinterested person under 11 U.S.C. § 101(14).

- does not represent or hold any interest adverse to the Debtors or the estate with respect to the matter for which it will be retained.

7

WHEREFORE, the applicants respectfully request authorization to employ the professional to render services in accordance with this application, with compensation to be paid as an administrative expense, in such amounts as the Court may hereafter determine and allow.

                                                Subranni Zauber
                                                Attorneys for the Debtors

                                      By: */s/ John P. Leon*
June 19, 2015                                     John P. Leon