AGREEMENT AMONG DEBTORS AND
EQUITY PARTNERS HG LLC

THIS AGREEMENT is made this 18th day of June, 2015 by and among Renault Winery, Inc., Renault Golf, LLC, Tuscany House, LLC, Renault Winery Properties, LLC, and Renault LLC t/a Renault Realty Co. LLC, Debtors (individually and collectively "Debtor"), Case # 14-33075-ABA, 14-33079-ABA, 14-33084-ABA, 14-33080-ABA, and 14-33082-ABA, in the United States Bankruptcy Court for the District of New Jersey (the "Court"), and Equity Partners HG LLC ("Equity Partners"), a Delaware limited liability company.

## RECITALS

WHEREAS, each Debtor is a Debtor-in-Possession in a Chapter 11 case pending in the Court and desires to obtain a joint venture partner or an equity investor, refinance its debt, restructure, sell, lease or otherwise dispose of the Debtor's businesses going concerns and/or some or all of Debtor's interest in the assets of Debtor's estates (the "Assets"); and

WHEREAS, Equity Partners is an enterprise specializing in turnarounds, financial restructuring, consulting, refinancing, sales as going concerns, sales of real and personal property, liquidation of assets of financially troubled companies; and

WHEREAS, Equity Partners is an enterprise with over twenty six years of experience in assisting over 400 financially troubled companies, including more than 200 in Chapter 11 in the United States Bankruptcy Court in over 60 Districts, and

WHEREAS, Equity Partners has substantial experience in advertising and marketing for the purposes of locating investors and joint venture partners, selling as "going concerns" or otherwise disposing and refinancing of major properties, including properties and related establishments owned or leased by debtors involved in bankruptcy proceedings; and

WHEREAS, Debtor and Equity Partners desire to enter into this Agreement regarding the services to be performed by Equity Partners and the compensation to be paid to Equity Partners for its services;

NOW, THEREFORE, in consideration of the promises herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Debtor and Equity Partners hereby agree, subject to all the terms, covenants, conditions and provisions hereinafter set forth, as follows:

1. EXCLUSIVE RIGHT TO ADVERTISE AND MARKET AND TO FIND EQUITY INVESTORS OR A JOINT VENTURE PARTNER, RESTRUCTURE, REFINANCE, SELL, LEASE OR OTHERWISE DISPOSE OF THE ASSETS. Debtor hereby retains Equity Partners as Debtor's exclusive agent to restructure (meaning the possible financial restructuring of the existing claims of the creditors and/or equity stakeholders of the Debtor), advertise and market and to refinance, sell, lease or otherwise dispose of the Assets, or to find equity investors or a joint venture partner. Debtor acknowledges that Equity Partners will be entitled to its fee regardless of who the buyer, lender, partner, or investor is or who brought them to the transaction. The term of Equity Partners' exclusive rights shall begin as of the date that this Agreement is approved by the Bankruptcy Court and shall continue for the greater of: (i) ninety (90) days or (ii) as long as any prospect identified during the 90 days is under a letter of intent for any transaction regarding the business or its Assets.

2. SERVICES. Equity Partners shall perform the following services:

(a) Inspect the Assets to determine their physical condition.

(b) Prepare a program which may include marketing the Assets through newspapers, magazines, journals, letters, fliers, signs, telephone solicitation, the Internet and/or such other methods as Equity Partners may deem appropriate.

(c) Prepare advertising letters, fliers and/or similar sales materials, which would include information regarding the Assets.

(d) Endeavor to locate parties who may have an interest in becoming a joint venture partner, investing in, acquiring, or refinancing the Debtor's business or the Assets.

(e) Circulate materials to interested parties regarding the Assets, after completing confidentiality documents.

(f) Respond, provide information to, communicate and negotiate with and obtain offers from interested parties and make recommendations to Debtor as to whether or not a particular offer should be accepted.

(g) Communicate regularly with Debtor in connection with the status of Equity Partners' efforts with respect to the disposition of the Assets. This shall include a weekly written report to all Parties-in-Interest.

(h) If requested by Debtor, negotiate with various stakeholders of the Debtor, including but not limited to, secured and unsecured creditors and equity shareholders, in regards to the possible financial restructuring of the existing claims of the creditors and/or equity stakeholders of the Debtor.

  (i) Recommend to Debtor the proper method of handling any specific problems encountered with respect to the marketing or disposition of the Assets.

  (j) Perform related services necessary to maximize the proceeds to be realized for the Assets.

The Debtor will furnish, or cause to be furnished, to Equity Partners such information as Equity Partners reasonably requests in connection with the performance of its services hereunder (all such information so furnished is referred to herein as the "Information"). The Debtor understands and agrees that Equity Partners, in performing its services hereunder, will use and rely upon the Information as well as publicly available information regarding the Debtor and that Equity Partners does not assume responsibility for independent verification of the accuracy, completeness, or reasonableness of any information, whether publicly available or otherwise furnished to it, concerning the Debtor, including, without limitation, any financial information, forecasts or projections, considered by Equity Partners in connection with the rendering of its services. The Debtor represents that all information furnished by it, on its request or on its behalf to Equity Partners, whether such information relates to the Debtor or otherwise, will be accurate and complete in all material respects and will undertake to update such information as necessary throughout the term of this engagement. Accordingly, Equity Partners shall be entitled to assume and rely upon the accuracy and completeness of all such information and is not required to prepare or obtain any independent evaluation or appraisal of any of the assets or liabilities, of the Debtor. With respect to any financial forecasts and projections made available to Equity Partners with respect to the Debtor and used by Equity Partners in its analysis, Equity Partners shall be entitled to assume that such forecasts and projections have been reasonably prepared on bases reflecting the best currently available estimates and judgments of the management of the Debtor, as the case may be, as to the matters covered thereby.

In connection with the services described in this Section 2, the Debtor authorizes Equity Partners, as the Debtor's representative, to transmit the Information to potential parties to a transaction and to execute on behalf of the Debtor a confidentiality agreement, to be entered into by such parties. The Debtor hereby acknowledges that all Information will be provided by or based upon information provided by the Debtor or third parties, and that the Debtor will be solely responsible for the contents thereof.

Debtor shall promptly file an application seeking the entry of an order approving this Agreement and authorizing Debtor to retain Equity Partners pursuant to the terms of the Agreement as professional persons pursuant to sections 327 and 328(a) of the Bankruptcy Code, the Bankruptcy Rules, and any applicable local rules and order of the Court. Equity Partners reserves the right to terminate its obligations under this Agreement if the Bankruptcy Court enters an order that is inconsistent with this Agreement or which deletes key provisions of same. Equity Partners' services shall commence upon execution of the Agreement and the entry of an order authorizing the Debtor to engage Equity Partners (the "Approval Order"). The proposed advertising and marketing program shall

be submitted for Debtor's approval prior to implementation. The development of the advertising and marketing program shall be the sole responsibility of Equity Partners.

3. OFFERING PROCEDURE. Equity Partners shall negotiate with all prospects and solicit offers for refinancing, investment by a third party, lease, and or potential sale of the Assets with the following procedures:

    (a) All communications and inquiries regarding the assets shall be directed to Equity Partners.

    (b) In order to be considered, all offers must be accompanied by appropriate financial material showing ability to close a transaction and include a deposit where deemed necessary. If a deposit is forfeited to the Debtor as liquidated damages because a buyer/investor fails to close on a transaction, Equity Partners shall be entitled to retain, as a fee, the lesser of:
        (i) 50% of the deposit, or
        (ii) An amount equal to what the fee would have been, under Sections 5 and 6 herein, had the transaction closed.

    (c) Debtor shall have the right to:
        (i) determine in its sole discretion which offer is to be accepted; and
        (ii) reject, at any time, any and all offers which in the Debtor's sole discretion are deemed to be inadequate or insufficient or not in the best interest of the Debtor.

4. EXPENSES. Equity Partners will prepare a budget for advertising, marketing, travel, and any other expenses, which shall not exceed twenty thousand dollars ($20,000), which amount shall be paid to Equity Partners by Debtor as follows: $5,000 to be paid immediately following the entry of the Approval Order, then $5,000 to be paid 30 days after the entry of the Approval Order, and the balance of up to $10,000 to be paid in cash at settlement of any transaction, and such payment shall be a condition of, the closing of any transaction. These monies are strictly for marketing costs such as printing, mailing, telephone and travel related expenses to meet investors and to provide due diligence materials to prospects.

5. GROSS VALUE. The term "Gross Value" as used in this Agreement shall include the aggregate consideration received by the Debtor, the Debtor's equity interests and holders of any secured, priority and/or general unsecured claims against the Debtor. Gross Value includes but is not limited to:

    (a) Cash, stock, equity interests, membership interests and or partnership interests;

    (b) Payments made in installments;

    (c) Notes, securities and other property;

(d) Liabilities, including all debt and guarantees assumed, refinanced or reorganized, on-balance sheet and off-balance sheet;

(e) Contingent payment (whether or not related to future earnings or operations);

(f) Any interest or other payments made on or in respect of debt;

(g) Any other payment made or in respect to the equity interests (including, without limitation to the following, shareholder or membership interests) in the Debtor and/or its affiliates;

(h) Any consideration payable under consulting agreements and/or non-compete agreements;

(i) Any assignment of leases, whether real or personal property;

(j) Any release or assumption of bonds; and

(k) Any credit bids made by secured parties.

The fees and expenses of Equity Partners, including but not limited to those under sections 3(b) and 4 of this Agreement, and all other closing costs and/or adjustments, including adjustments and/or payments of whatever kind to lien holders, secured parties, mortgages or otherwise shall not be deducted when computing "Gross Value" or the fee to be paid Equity Partners.

6. EQUITY PARTNERS FEE. Equity Partners' fee will be:

(a) in the case of an equity investment or sale, for any offers received under the terms of this Agreement and subsequently funded, the fee for its services shall be the greater of $100,000 or an amount calculated as follows:

    5% of the first $5,000,000 of Gross Value, and
    3% of Gross Value between $5,000,001 and $10,000,000, and
    4% of Gross Value in excess of $10,000,000, or

(b) in the case of a restructuring, paid in cash upon approval of the restructuring and/or plan of reorganization, and shall be the greater of $150,000 or an amount calculated under sections 5 and 6(a) herein, or

(c) in the case of refinancing, paid upon settlement, and shall be the greater of $150,000 or 3% of the Gross Value. In the case of refinancing, for purposes of calculating Gross Value, the total amount of the available financing committed to will be used, whether or not the Debtor chooses to draw down the entire amount available.

(d) in the case of a joint venture or merger, upon consummation, and shall be the greater of $150,000 or or an amount calculated under sections 5 and 6(a) herein.

(f) Equity Partners shall be entitled to receive its fee from any purchase, refinance, equity investment, joint venture or restructuring completed within 12 months by/with a prospect identified during the term of this Agreement.

(g) For any transaction that closes with Financial Business Systems or either of its principals (Steve Foreman/Tilak Singh) ("Shortlist One"), Equity Partners will agree to discount its fee by one-half (1/2), unless the Gross Value provided by Shortlist One is at least $250,000 higher than its first written offer, in which case the fee shall be discounted by one-third (1/3). For any transaction that closes with (i) Dr. Nicholas DePace & Associates or (ii) Dr. James Clifford ("Shortlist Two"), Equity Partners will agree to discount its fee by one-third (1/3), unless the Gross Value provided by Shortlist Two is at least $250,000 higher than its first written offer, in which case there will be no discount.

(h) The fee to Equity Partners shall be paid in cash at settlement of any investment and/or sale of assets if the fee has been approved by the Court, and if the fee has not been approved by the Court as of the date of settlement the amount of the fees all be escrowed pending the Court's ruling on Equity Partners' fee application. Payment of the fee shall be a condition of the closing of any transaction if the fee has been approved by the Court as of the date of settlement.

In its application to retain Equity Partners, Debtor will request the court to include the following provisions in the Order approving Debtor's retention of Equity Partners: On behalf of Equity Partners Debtor shall file with the Court a final fee application only, in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and the Trustee Guidelines, seeking approval of Equity Partners' fe in the same Order as approves the transaction; provided, however, that the final fee application filed by Equity Partners shall be subject to review only pursuant to the standards set forth in section 328(a) of the Bankruptcy Code, and shall not be subject to any other standard of review set forth in section 330 of the Bankruptcy Code. Notwithstanding the foregoing, and any provision to the contrary in the Application or the Equity Partners Agreement, the U.S. Trustee shall have the right to object to Equity Partners' request for final compensation and reimbursement based on the reasonableness standard provided in section 330 of the Bankruptcy Code, and the Debtor shall have the right to object to any application of Equity Partners'for compensation based upon a restructuring.

7. INDEMNITY. In consideration of Equity Partners' services as financial advisor and investment banker under this letter agreement, the Debtor and its stockholders agree to indemnify and hold harmless Equity Partners and each person, if any, who controls Equity Partners (within the meaning of the Securities Act of 1933, as amended, and the Securities Exchange Act of 1934, as amended) against any lawsuits, claims, losses,

damages or liabilities (or actions or proceedings in respect thereof) and costs and expenses to which Equity Partners or such controlling person may become subject to as a result of this agreement and subsequent engagement except for any such lawsuits, claims, losses, damages or liabilities arising from (i) the gross negligence or willful misconduct of Equity Partners, or (ii) the negligence of Equity Partners resulting in death or grave bodily injury.  The provisions of this Section 8 shall survive the termination of Equity Partners' engagement under this agreement and shall be binding upon the Debtor, and its stockholders, and their successors and assigns (the "Indemnifying Party").

Provided, however, that notwithstanding the foregoing:

(a) Equity Partners shall not be entitled to indemnification, contribution or reimbursement, unless the indemnification, contribution or reimbursement is approved by the Court.

(b) Notwithstanding any provision hereof to the contrary, the Debtor shall have no obligation to indemnify Equity Partners and/or any person who controls Equity Partners (each, an "Indemnified Person") for any claim or expense that is either (i) judicially determined (the determination having become final) to have arisen from such Indemnified Person's gross negligence, wilfull misconduct, bad faith or self-dealing to which the Debtor has not consented; (ii) for a contractual dispute in which the Debtor alleges breach of the Indemnified Person's obligations to maintain the confidentiality of non-public information, unless the Court determines that indemnification, contribution or reimbursement would be permissible pursuant to In re United Artists Theatre Co., 315 F.3d 217 (3d Cir. 2003); or (iii) settled without the Debtor's consent prior to a judicial determination as to the person's gross negligence, wilfull misconduct, bad faith or uncontested self-dealing but determined by the Court, after notice and a hearing, to be a claim or expense for which the Indemnified Person should not receive indemnity, contribution or reimbursement under the terms hereof.

(c) If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in this case (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing this chapter 11 case, any Indemnified Person believes that it is entitled to the payment of any amounts by the Debtor on account of the Debtor's indemnification, contribution or reimbursement obligations under the Equity Partners Agreement (as modified by this Order), including, without limitation, the advancement of defense costs, such Indemnified Person must file an application therefor with the Court, and the Debtor may not pay any such amounts to the Indemnified Person before the entry of an order by the Court approving the payment.  This subparagraph (c) is intended only to specify a period of time under which the Court shall have jurisdiction over any request for fees and expenses by any Indemnified Persons for indemnification, contribution and/or reimbursement, and not a provision limiting the duration of the Debtor's obligation to indemnify, or make contributions or reimbursements to, Indemnified Persons.  All parties in interest shall retain the right to object to any demand by any Indemnified Person for indemnification, contribution and/or reimbursement.

7

8. PUBLICITY. In the event of consummation of any transaction, Equity Partners shall have the right to disclose its participation in such transaction, including, without limitation, the placement of "tombstone" advertisements (which may include a reproduction of the Debtor's logo and a hyperlink to the Debtor's website) in financial and other newspapers and journals as well as Equity Partners' website.

9. NOTICES. All notices, statements, demands, requests, consents, communications and certificates from any party hereto to the other, shall be made in writing and sent to:

(a) If intended for the Debtor:

Joseph Milza
70 North Bremen Ave.
Egg Harbor City, N.J. 08215

With a copy to:

John P. Leon
Subranni Zauber LLC
Willow Ridege Executive Office Park
750 Route 73 South – Suite 307B
Marlton, N.J. 08053

(b) If intended for Equity Partners:

Kenneth W. Mann
Equity Partners HG
16 N. Washington Street, Suite 102
Easton, Maryland 21601

or other such addresses or entities either party hereto may from time to time direct by service of notice on the other party.

10. NONASSIGNABILITY. Neither party hereto shall assign this Agreement or any of its rights or interest hereunder without first obtaining the other party's written consent.

11. TIME OF THE ESSENCE. Time, whenever mentioned herein shall be of the essence of this Agreement.

12. ENTIRE AGREEMENT. This is the entire Agreement between the parties hereto regarding the transaction contemplated hereby and there are no other terms, covenants, conditions, provisions, warranties, representations or statements, oral or otherwise, of any kind whatsoever. Any Agreement hereafter made shall be ineffective to change, modify, discharge or effect an abandonment of this Agreement in whole or in part unless such agreement is in writing and signed by the party against whom enforcement of the change, modifications, discharge or abandonment is sought.

13. HEADINGS. The headings, if any, incorporated in this Agreement are for the convenience and reference only and are not part of this Agreement and shall not in any way control, define, limit or add to the terms and conditions hereof.

14. GOVERNING LAW. This Agreement shall be construed, interpreted and governed by the laws of the state in which the principal office of the Debtor is located.

15. COUNTERPARTS. This Agreement may be executed in any number of counterparts, each of which shall be original, but such counterparts together shall constitute one and the same instrument.

16. LEGAL CONSTRUCTION. In case any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, the invalidity, illegality, or enforceability shall not affect any other provision of this Agreement and this Agreement shall be construed as if the invalid, illegal, or unenforceable provision had never been contained in it.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement under seal, as of the day and year first above written, SUBJECT TO THE APPROVAL OF THE U.S. BANKRUPTCY COURT.

DEBTOR:

RENAULT WINERY, INC.
By: _____    _____PRES._____
Name: __Joseph M Milza__              Title

RENAULT GOLF, LLC
By: _____    _____PRES._____
Name: __Joseph M Milza__              Title

TUSCANY HOUSE, LLC
By: _____    _____Member_____
Name: __Jose M Milza__                Title

RENAULT WINERY PROPERTIES, LLC
By: _____    _____Member_____
Name: __Joseph Milza__                Title

RENAULT LLC t/a/ RENAULT REALTY CO.
By: _____    _____Member_____
Name: __Joseph Milza__                Title

9

EQUITY PARTNERS HG LLC

By: _____
Kenneth W. Mann, Senior Managing Director

Additional Signature page to
**Agreement Among Debtors and Equity Partners HG LLC**