**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| John P. Leon   (JL4638)<br>Scott M. Zauber (SZ6086)<br>Margaret A. Holland (MH4707))<br>Subranni Zauber LLC<br>750 Route 73 South – Suite 307B<br>Marlton, NJ 08053<br>(609) 347-7000; FAX (609) 345-4545<br>Attorneys for Debtors | |
| In Re:<br><br>RENAULT WINERY, INC. [1]<br><br>                    Debtors | Case No.:  14-33075-ABA<br>Judge:  Andrew B. Altenburg, Jr.<br>Chapter 11<br>Jointly Administered<br><br>**Hearing Date:  To Be Fixed by the Court** |

**Debtors' Motion for Order Pursuant to Fed. R. Bankr. P. 9019
for an Order Approving Settlement Agreement by and Among
(I) Debtors, (II) Joseph And Geraldine Milza, and (III) Ocean First Bank.**

Renault Winery, Inc., ("Renault" and its affiliated debtors (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases")  hereby file this motion (the "Motion") pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an Order, (the "Settlement Order") in the form attached hereto as Exhibit "A," approving the Settlement and Forbearance Agreement, attached hereto as Exhibit "B" (the "Settlement Agreement"), by and among the Debtors, Joseph and Geraldine Milza, (the "Milzas") and OceanFirst Bank ("OceanFirst" or the "Bank,").  The Debtors, Milzas, and the Bank are collectively referred to herein as the "Parties"

In support of the Motion, the Debtors respectfully represent as set forth below.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Renault Realty, Co., LLC, (9787), Renault Golf, LLC (0618), Renault Winery Properties, LLC (7686), Tuscany House, LLC (6179), and Renault Winery, Inc. (7686).  The mailing address for each of the Debtors is 72 North Bremen Ave., Egg Harbor City, NJ 08215.

1

## BACKGROUND

**A.    Overview**

1. The Debtors own and operate a winery, a hotel, a golf course, a restaurant, and a banquet facility located in Galloway Township and Egg Harbor City, New Jersey.

2. OceanFirst made two loans to Debtors; the first loan was in the original principal amount of $6,554,000.00 and the second in the original amount of $200,000.00 (the "Loans"). As security for payment of the Loans, Renault Winery Properties LLC, Renault Winery, Inc. and Renault Realty Co., LLC executed Mortgages and Assignments of Leases and Rents (the "Real Estate Collateral Documents") to OceanFirst on the real estate on which Debtors operate their businesses (the Bank's "Collateral Real Property").

3. Renault also provided to OceanFirst a Security Agreement and Uniform Commercial Code Financing Statement, granting the Bank a blanket lien on substantially all of Renault's personal property assets and proceeds thereof (the "Real Estate Collateral Property" and the "Collateral Personal Property" are collectively referred to herein as (the "Collateral").

4. The Milzas executed and delivered to OceanFirst their personal guarantees, in which they agreed to pay all sums owed by Renault on the Loans. Subsequently, Renault defaulted under the Loans in July 2013.

5. OceanFirst commenced foreclosure proceedings in the New Jersey Superior Court against the Collateral Real Property and a Final Judgment in Foreclosure was entered on August 1, 2014 in the amount of $7,723,547.17 plus counsel fees of $54,407.97, for a total judgment of $7,777,955.14 (the "Foreclosure Judgment").

6. OceanFirst also commenced legal proceedings in the New Jersey Superior Court on the promissory note, and to replevy the Collateral Personal Property; on August 1, 2014 a final money judgment was entered jointly and severally against the Debtors and the Milzas in the

2

amount of $7,886,257 (the "Money Judgment").

7. Additional background facts on the Debtors, including an overview of the Debtors' businesses, and information on the events leading up to the Chapter 11 Cases are contained in the Declaration of Dennis Del Vecchio in Support of First Day Motions and Applications [PACER Docket No. 12] (the "Del Vecchio Declaration").

8. On November 13, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey (the "Court"), thereby commencing these Chapter 11 cases. The Debtors continue to operate their businesses and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9. No official committee or examiner has been appointed by the Office of the United States Trustee in these Chapter 11 Cases.

10. On January 22, 2015, the Bankruptcy Court entered a Final Order Authorizing Use of Cash Collateral and Providing Adequate Protection. ( PACER Docket No. 77) (the "Cash Collateral Order").

11. As part of its efforts to execute upon its Money Judgment, OceanFirst levied upon a certain bank account owned by Geraldine Milza at Wells Fargo Bank, and filed a motion in the Superior Court for turnover of the levied funds. The Bank also filed in the Superior Court a motion to levy upon certain real property owned by the Milzas.

12. The Debtors have retained Equity Partners HG LLC ("Equity Partners") to seek an equity investor, a refinancing lender, or a purchaser of the Debtors' assets and businesses (the "Going Concern"). This Court has authorized the Debtors' retention of Equity Partners.

13. Equity Partners and the Debtors' management are currently facilitating due diligence with interested parties.

14. On August 11, 2015 the Debtors filed a Motion for an Order Authorizing and Approving Bid Procedures to be Employed in Connection With the Proposed Sale of the Assets of the Debtors; Scheduling an Auction and Sale Hearing and other related relief. (the "Bidding and Sale Motion"). On the same date the Debtors also filed Information for Notice of a Public Auction Sale for Estate Properties.

15. On August 10, 2015, after lengthy negotiations, the Debtors and Milzas executed the Settlement Agreement with OceanFirst, allowing the sale process to proceed. Generally, under the terms of the Settlement Agreement, the Bank agrees to accept less than the full amount due to it under the Foreclosure judgment, but only if it receives that amount by October 15, 2015 (with a possible extension to November 6, 2015).

B. **Consent Order Vacating Automatic Stay With Respect to Collateral Real and Personal Property of OceanFirst Bank**

16. The Settlement Agreement provides that the Bank is entitled to relief from the automatic stay if it does not receive the required payment by October 15, 2015. The Parties hereby respectfully request that the Consent Order Vacating the Automatic Stay With Respect to Collateral Real and Personal Property of OceanFirst Bank be granted (the "Stay Relief Order"). The Stay Relief Order shall become effective immediately only upon the concurrence of certain events, such as if payment for OceanFirst's Judgment is not made by the Payment Deadline (defined below) and other events specifically set forth in the Settlement Agreement in paragraphs 4.1 to 4.7. A copy of the Consent Order Granting Relief from the Automatic Stay is attached herein and submitted as Exhibit "C").

**SUMMARY OF PERTINENT TERMS IN THE SETTLEMENT AGREEMENT**

17. The Parties intend through the Settlement Agreement to document their resolution of the Bank's claim, and to implement the procedures set forth in the Bidding and

4

Sale Motion.

18. The following summarizes the pertinent terms of the settlement as reflected in the Settlement Agreement:

    A.    <u>Payment of OceanFirst's Judgment</u>. On or before October 15, 2015, (the "<u>Payment Deadline</u>") from the New Proceeds of a transaction involving the Going Concern (the "Transaction"). OceanFirst shall be paid the sum of money by wire transfer equal to (i) $6.4 million from the Net Proceeds up to $8.5 million and (ii) 64.7% of the Net Proceeds in excess of $8.5 million up to the dollar amount due under the Money Judgment.

    B.    <u>Extension of Payment Deadline</u>. The Payment Deadline may be extended to a date certain upon the Order of the Bankruptcy Court, but only upon good cause shown by the Debtors. In no event shall the Debtor request or be granted, an extension of the Payment Deadline later than November 6, 2015.

    C.    <u>Stay Relief Order is to be Immediately Entered</u>. Simultaneously with the execution of this Agreement, the Debtors agree that they shall execute and deliver to the Bank a consent order in the Bankruptcy Cases granting OceanFirst relief from the automatic stay as to all of the Bank's Collateral Real and Collateral Personal Property, which are subject to OceanFirst's security interest (the "<u>Collateral</u>"). (See <u>Exhibit "C"</u>). The Stay Relief Order shall become effective upon certain events occurring ("<u>Forbearance Default</u>)" as set forth specifically in paragraphs 4.1 to 4.7.

    D.    <u>Cash Collateral Order</u>. The Cash Collateral Payments due under the Cash Collateral Order shall be due on Monday instead of the preceding Friday. The Debtors agree that they shall not make a motion or otherwise apply to further modify the Cash Collateral Order at any time prior to September 7, 2015. If after the conclusion of the marketing campaign and any bidding process the highest bidder would yield a lower sum to the Bank than the Payment as defined in this Agreement, then OceanFirst, in its sole discretion, may agree to accept less than the Payment amount, credit bid its judgment, or elect to implement the Stay Relief Order for disposition of its Collateral Real and Personal Property. The Debtors shall disclose to OceanFirst all offers they, or their marketing professionals receive regarding the Going Concern.

    E.    <u>Bankruptcy Court Approval</u>. The Debtors shall promptly make the appropriate application for approval of the Agreement by the Bankruptcy Court, on notice to interested parties under Bankruptcy Rule 9019. The Application shall be made on short notice and within 7 days of full execution of this Agreement. In addition to entry of an Order of the Bankruptcy Court approving this Agreement (the "Approval Order"), the application shall seek the entry of a stay relief order on the Bank's Collateral. In the event the Bankruptcy Court fails to approve this Agreement or enter the stay relief order, the Agreement shall be deemed void and unenforceable and the Bank shall be entitled to immediately relist the Motions to Turnover Funds and Levy Upon Real Property with the Superior Court.

      F.      <u>Compliance with Debtors' Chapter 11 Obligations.</u> The Debtors agree that they shall comply with all of their duties and responsibilities imposed upon Chapter 11 Debtors.

      G.      <u>Real Estate Tax Payments.</u> The Debtors shall pay each and every accruing quarterly real estate tax and other municipal obligation with respect to the OceanFirst Collateral Real Property as they become due.

      H.      <u>Superior Court Proceedings: Consent Order for Turnover of Funds Levied against Bank Accounts.</u> Contemporaneously with the execution of this Agreement, the Milzas shall execute and deliver to the Bank a Consent Order providing for the turnover of the funds levied upon in the Milza Wells Fargo Bank Account in the amount of $99,956.43. (Copy of this Consent Order for Turnover is attached as <u>Exhibit "D"</u>). Upon Approval of this Agreement by the Bankruptcy Court the Parties shall submit the Consent Order to the Superior Court of New Jersey requesting its immediate entry. The Consent Order shall provide for the release of $2,514 of the $102,470.43 to Milza, along with all subsequently deposited funds representing social security income. (See Exhibit D for specific terms).

      I.      <u>Superior Court Proceedings: Consent Order Permitting Ocean First to Levy Upon Real Property of Milza.</u> Contemporaneously with the execution of this Agreement Milza shall execute and deliver to OceanFirst a Consent Order Permitting the Bank to levy upon the condominium in South Seaside Park known as Kings Gate Condominium, Units C-2 and C-3, Lots 302 and 303, Block 1717.241.(Copy of this Consent Order is attached as Exhibit "E"). Upon approval of the Bankruptcy Court of this Agreement, the parties shall submit the Consent Order to the Superior Court of New Jersey requesting its immediate entry. (See Exhibit E for specific terms).

      J.      <u>Deposition of Milza</u>. Joseph Milza will appear for a post judgment deposition on August 21, 2015 at the offices of his attorney in Atlantic City, NJ and he shall comply with the pending subpoena as testificandum, dated February 2, 2015. The Milzas shall preserve their assets.

      K.      <u>Forgiveness of Deficiency Balance.</u> Upon receipt of the Payment of a minimum of 6.4 Million Dollars by the date and as otherwise provided for under paragraph 2 of this Agreement, the Debtors and Milza shall be forgiven from the balance owed under the OceanFirst Judgment/Loans.

      L.      <u>Forbearance.</u>  If the Debtors and Milza are in compliance with the terms set forth in this Agreement, and except as otherwise provided for in this Agreement, OceanFirst shall forbear from executing on the assets of the Milzas in order to satisfy the Judgment. This provision shall apply only to those Milza assets disclosed to the bank through the Milzas response to the information subpoenas.

      M.      <u>Deficiency Balance.</u>  Upon receipt of the payment of a minimum of 6.4 Million Dollars as provided for under Paragraph 1 of the Settlement Agreement, the

Debtor and Milzas shall be forgiven from the balance owed under the Judgment.

## JURISDICTION

19. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

20. By this Motion, the Debtors request an Order pursuant to Bankruptcy Rule 9019, approving the Settlement Agreement in all respects. See Exhibit "A".

## BASIS FOR RELIEF

21. Bankruptcy Rule 9019(a) provides that "[o]n motion by the trustee and after notice and a hearing, a court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Compromises are favored in bankruptcy, because they minimize the costs of litigation and further the parties' interests in expediting administration of a bankruptcy estate. Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996); 10 COLLIER ON BANKRUPTCY ¶ 9019.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). In deciding whether to approve a compromise under Bankruptcy Rule 9019, a court must determine if the settlement is "fair, reasonable, and in the interest of the estate." In re TSIC, Inc., 393 B.R. 71, 78 (Bankr. D. Del. 2008); In re Key3Media Grp., Inc., 336 B.R. 87, 92 (Bankr. D. Del. 2005) (citing In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)). This test is known as the "best interests" test.

22. Under the "best interests" test, a debtor must show that a compromise or settlement is "fair and equitable" to the estate. Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968); In re Nutraquest, Inc., 434 F.3d 639, 645 (3d Cir. 2006) (discussing application of fair and equitable standard); Martin, 91 F.3d at 393 (same); In re Marvel Entertainment Group, Inc., 222 B.R. 243 (D. Del. 1998)

(proposed settlement held to be in best interest of the estate).

23. Additionally under the "best interests" test and as further articulated by courts within the Third Circuit, the reasonableness of a proposed compromise and settlement is determined by reference to the following four factors: (1) the probability of success in litigation concerning the subject matter of the settlement; (2) the projected difficulty in collecting after obtaining a judgment in such litigation; (3) the complexity of the issues involved, and the expense, inconvenience, and delay that would therefore attend such litigation; and (4) the paramount interest of holders of claims against and interests in the debtor, whose reasonable views of the settlement warrant proper deference. Martin, 91 F.3d at 393 (following TMT and clarifying the four-factor test); see also Nutraquest, 434 F.3d at 644-45; In re RNI Wind Down Corp., 348 B.R. 286, 297-99 (Bankr. D. Del. 2006); In re Kaiser Aluminum Corp., 339 B.R. 91, 96-97 (D. Del. 2006).

24. In applying the Martin/TMT four-factor test, the reasonableness of a proposed compromise and settlement does not depend on a determination that the settlement reached is the best that could possibly be obtained, but rather, whether the settlement "fall[s] below the lowest point in the range of reasonableness." In re Pa. Truck Lines, Inc., 150 B.R. 595, 598 (E.D. Pa. 1992), aff'd. 8 F.3d 812 (3d Cir. 1993); Key3Media, 336 B.R. at 92-93 (court is not required to determine that settlement is best possible compromise).

25. The Martin/TMT factors weigh heavily in favor of approving the Settlement Agreement, for the following reasons. Importantly, the Settlement Agreement averts potentially costly and time-consuming litigation among the Parties concerning the liens of the secured creditor OceanFirst and its collection actions against Renault and the Milzas. Specifically, OceanFirst filing a motion for relief from the automatic stay in Bankruptcy Court, and continuing to litigate the turnover motion and real property levy motion against the Milzas in

Superior Court. The Settlement Agreement further provides that if the Agreement is not approved, the Bank would be entitled to immediately relist the motion to turn over funds and levy upon the real property. This potential litigation serves to only impede a sale of the Debtors' assets, or other transaction to generate funds to the Debtors' creditors.

26. The Settlement Agreement is the result of substantial negotiation among the Parties. Its approval, which is required and essential for the sale of the Collateral to occur, will allow the Debtors' Chapter 11 cases to continue and the Debtors to continue operating their businesses pending a sale or other transaction. As a practical matter, any sale of Debtors' assets is contingent upon the Settlement Agreement being approved. Thus, in exercising their business judgment, the Debtors have decided that the Settlement Agreement is in the best interest of the Debtors' estates and their creditors and the best opportunity to maximize the return to creditors.

27. Further, the Parties negotiated the terms of the Settlement Agreement in good faith and at arm's length. Accordingly, the Debtors believe that the terms of the Settlement Agreement provide reasonable consideration to the Debtors' estates and are fair, equitable and in the best interests of all parties. For all of the foregoing reasons, the Debtors submit that the Settlement Agreement is well within the "range of reasonableness" required by Bankruptcy Rule 9019, and respectfully request its approval by the Court.

## NOTICE

28. The Debtors have served or are in the process of serving this Motion and all exhibits attached, by email, facsimile or next business day delivery on: (a) the 20 largest creditors in each case; (b) the non-Debtor parties to any active UCC financing statements on file against any of the Debtors; (c) the non-Debtor parties who hold any (or claim to hold) a mortgage, tax or judgment liens against any of the debtors' assets; (d) all parties requesting notices pursuant to Bankruptcy Rule 2002; (e) the Internal Revenue Service; (f) the New Jersey

Division of Taxation; (g) ( the New Jersey Dept. of Labor and Workforce Development-Division of Employer Accounts and (h) the Office of the United States Trustee. (collectively, the "Service Parties").

29. No previous motion for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request entry of an order (i) granting the relief requested herein and (ii) granting the Consent Order Vacating the Automatic Stay With Respect to Collateral Real and Personal Property of OceanFirst Bank, (iii) granting the Debtors such other and further relief as the Court deems just and proper.

August 17, 2015                                                /s/ Scott M. Zauber
                                                               Scott M. Zauber
                                                               Margaret A. Holland